PEOPLE v. CURRAN.

No. 20,927; November 28, 1892.

31 Pac. 1116.

**Larceny—Evidence.—Defendant and One F. were Jointly in-**dicted for grand larceny. On the trial there was evidence that wheat stolen by F. was stored in an outbuilding of defendant, but there was nothing to connect him with F., nor was it shown that defendant was acquainted with him. Held, that the verdict against defendant was not sustained by the evidence.[1]

APPEAL from Superior Court, Stanislaus County; William O. Minor, Judge.

---

[1] Cited in the note in 101 Am. St. Rep. 505, on the possession of stolen property as evidence of guilt.

One Curran was jointly indicted with one Fitzpatrick for grand larceny. Curran demanded a separate trial and was convicted. From the judgment, and from an order denying his motion for a new trial, he appeals. Reversed.

L. J. Maddux and Eastin & Griffin (W. E. Turner of counsel) for appellant; Attorney General Hart for the people.

PATERSON, J.—The defendant Curran and one Fitzpatrick were charged jointly with the crime of grand larceny. Separate trials were demanded. The defendant Curran was tried and convicted, and from the judgment and an order denying his motion for a new trial he has appealed. We have carefully examined the evidence set forth in the bill of exceptions, and find nothing therein which sustains the verdict. It is not a case of conflict of evidence. The testimony tends to show that Fitzpatrick and another stole twenty-nine sacks of wheat and stored it in a cabin belonging to the defendant Curran. There is not a scintilla of evidence which connects the defendant with Fitzpatrick, or the person who assisted him in stealing the wheat. It is not shown even that he had any acquaintance with either one of them. The wheat was stolen on the evening of the 18th of July, 1891, and placed in the cabin of the defendant. The following is a summary of all the evidence in the case: Watson testified that on July 19th he missed twenty-nine sacks from the pile of grain, and discovered the tracks of a spring-wagon which had been drawn by two mules from Fitzpatrick's place to the stone cabin; that Curran was hauling wheat on the 19th with a four-horse wagon from the Wilson tract adjoining the tract on which the cabin was situated, and that he had been hauling wheat in the same way every day for some time prior to that time. Waterhouse, a deputy sheriff, testified that Curran told him on the 19th, at Salida, that some one had been putting wheat in his cabin, and wanted him to go over and investigate the matter, as there was likely to be trouble. This statement was made before anything was said to Curran by the officer. McGinn, the warehouseman, testified that Curran had brought wheat to his warehouse every morning, and deposited the same in the name of Mary A. Wilson; that on the morning of the 19th he deposited forty sacks in the name of Mrs. Wilson, and that

these forty sacks of wheat were afterward sold and the money paid to Mrs. Wilson; that Curran never brought any wheat of his own there, and that, as soon as he arrived on the morning of the 19th, he told the witness about his discovery of the wheat in the cabin. Jeffries testified that he saw a wagon on the morning of the 19th standing at the door of the cabin with some wheat on it; that he did not see anyone load any wheat on the wagon at the cabin, but did see the defendant picking up wheat in the field near the same. McGinnes testified that he was a deputy constable; that he was told by Curran on the morning of the 19th that a lot of wheat had been placed in his cabin, but he did not know how it got there; that the defendant said to him he noticed wagon tracks leading into the cabin, and there was something wrong, and had driven in there to see what it was, and had discovered the wheat in the cabin. Grider testified that on the night of the 19th he saw two men hauling wheat from the pile to the cabin. He believed these men to be Will Ducker and Sylvester Fitzpatrick. The only testimony in the record which in any way tends to connect the defendant with the commission of any offense is that of Grider, the owner of the threshing outfit which was working in an adjoining field. He stated that early on the morning of the 19th he saw the defendant loading wheat from the cabin upon his wagon. Inasmuch as there is nothing whatever in the evidence tending to show that the defendant ever had any relations with the parties who stole the wheat, or that he even was acquainted with them, the most that can be claimed for this evidence is that it tended to show the defendant had received the wheat knowing it to have been stolen; but that is not the offense charged here. If it should be conceded, however, that the testimony of Grider of itself tended to connect the defendant with the commission of the crime of grand larceny, with which he was charged, we think that the evidence, taken as a whole, is entirely consistent with the innocence of the defendant, and that the verdict cannot stand. It is the duty of the prosecution to make out a case against the defendant. All the circumstances of the case, when taken together, show very clearly that Grider was mistaken in saying that the defendant had taken wheat from the cabin on the morning of the 19th. He was at least half a mile distant from the cabin at the time he claims to have

watched the operations of the defendant. He was contradicted in two material respects by two witnesses, Jeffries and Watson. The latter testified that he saw the defendant drive up to the cabin and stop, but that he did not take any wheat therefrom; that he was working on the Grider machine; that Grider was lying in his bed at the time the defendant was at the cabin; and that he was too far away from the cabin anyway to see what was going on there at that hour in the morning. It is in evidence, uncontradicted, that the defendant had for some time been hauling wheat daily from land surrounding the cabin, and that on the morning of the 19th a portion of his load had been taken from the ground very near the place where the cabin was situated. Several representative citizens of the county of Stanislaus testified that they had known the defendant for several years, and that his reputation for honesty and integrity in the neighborhood where he lived was good—had never before been questioned. A conviction—especially a conviction of felony—ought not to be permitted to stand on mere conjecture. The prosecution is bound to make out a case. It is difficult to see how the jury, under the instructions of the court, could say that they were satisfied beyond a reasonable doubt of the guilt of the defendant, unless there was evidence before them which is not contained in the record before us. "That evidence is deemed satisfactory which ordinarily produces moral certainty or conviction in an unprejudiced mind. Such evidence alone will justify a verdict." Judgment and order reversed.

We concur: Garoutte, J.; Harrison, J.